UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    -against-

ANTOINE STEWART,

                              Defendant.

---

02-CR-1435 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court are motions filed by Defendant Stewart: 1) a motion for reconsideration of the Court's June 2021 denial of a motion for a sentence reduction under Section 404 of the First Step Act, (dkt. no. 433), and 2) a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 432). The Government responded, (dkt. no. 435), Defendant replied, (dkt. no. 442), and Defendant filed supplemental authority, (dkt. no. 444), and several letters, (dkt. nos. 436, 444).

    I.    Background

            a. Defendant's Murder of William Ragland, Trial, and
               Sentencing

    On July 11, 2002, Defendant walked up to William Ragland and shot him repeatedly at close range, killing Ragland. (See dkt. no. 435 at 1.) Defendant had been hired as a hitman by the Westchester Avenue Crew, a narcotics trafficking organization operating out of the Saint Mary's Houses in the Bronx. (See id.)

1

The Crew's leader hired Defendant to murder Ragland because Ragland was selling crack in the Westchester Avenue Crew's territory. (See id.)  For the murder, Defendant was paid $500 cash and given approximately 20 grams of heroin.  (See id.)

Defendant was indicted for the murder and charged in six counts with: (1) participating in a conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (2) murder in aid of racketeering, in violation 18 U.S.C. §§ 1959(a)(1) and 2; (3) participating in a conspiracy to distribute 50 grams and more of crack cocaine and an unspecified amount of heroin, in violation of 21 U.S.C. § 846; (4) murder in connection with a narcotics trafficking conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; (5) using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a narcotics trafficking conspiracy, which firearm was discharged, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2; and (6) murder with a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(j) and 2.  (Superseding Indictment, dated January 24, 2006 (dkt. no. 189).)  In February 2006, following an approximately two-week trial, Defendant was convicted of all counts.  (See dkt. no. 435 at 2.)

Defendant's convictions resulted in a Guidelines sentence of life imprisonment and a mandatory minimum sentence of life

imprisonment plus ten years.  (See id.)  In June 2006, the Court sentenced Stewart to a term of life imprisonment plus ten years. (Filed Judgment in a Criminal Case, dated June 28, 2006 (dkt. no. 225); see also dkt. no 435 at 2.)

b. Subsequent Procedural History

The Court of Appeals affirmed Defendant's conviction and sentence in 2008.  See United States v. Stewart, 280 Fed. App'x. 44 (2d Cir. 2008).  In 2013, this Court denied Defendant's Section 2255 motion and denied a certificate of appealability.  (See dkt. no. 338.)  The Court of Appeals denied Stewart's motion for leave to file a second Section 2255 motion in 2018.  (See dkt. no. 374.)

In May 2020, the Defendant filed a pro se motion seeking a sentence reduction pursuant to Section 404 of the First Step Act. (See dkt. no. 401.)  After the appointment of counsel, Defendant filed a motion that sought a reduction in the sentence for his Count Three 21 U.S.C. § 846 narcotics trafficking conspiracy conviction and vacatur of his Count Four 21 U.S.C. § 848(e)(1)(A) murder conviction.  (See dkt. no. 413 (the "First Step Act Motion")).  The Government opposed the First Step Act Motion, on multiple grounds, including that (1) Defendant's cumulative sentence of life plus 10 years imprisonment would remain unaffected, even if the Court granted his motion; (2) the First Step Act did not permit him to seek vacatur of a count of

conviction; and (3) there existed directly on-point Second Circuit case law specifically rejecting his argument for vacatur of Count Four. (See dkt. no. 416 at 17.)

In June 2021, the Court issued an order and opinion that denied the Defendant's First Step Act Motion. (See dkt. no. 430.)

As to Defendant's request for resentencing on Count Three, the Court found that Defendant was eligible for resentencing. (See id. at 7.) However, the Court, in an exercise of discretion, declined to resentence Defendant on that count for three reasons: (1) the Defendant's Guidelines range was unchanged by the First Step Act and any subsequent change to the Sentencing Guidelines, (see id. at 8-9); (2) resentencing the Defendant on Count Three would not impact his overall mandatory sentence of life imprisonment plus ten years, (see id. at 9-10), ("As the Government correctly notes, Count Three is an irrelevant component of [Defendant's] sentence . . . . The reduction of the mandatory minimum Defendant faced on Count Three does not affect the mandatory life sentence he received on Count One or the mandatory and consecutive 10-year sentence he received on Count Five."); and (3) the "heinous nature of the underlying crime" did not merit resentencing, despite the "improvements [Defendant] has made to his life" and granting the motion would have been inconsistent with the requirements of 18 U.S.C. § 3553(a), (id. at 10).

4

As to Defendant's request to vacate his Count Four murder conviction, the Court denied the motion procedurally and on the merits. (See id. at 11.) Procedurally, the Court found that "[t]he First Step Act does not provide for vacatur of counts." (Id.) And addressing the merits of the claim, the Court noted that "Defendant's argument has also been expressly rejected by the Court of Appeals twice." (Id. (citing United States v. Fletcher, 997 F.3d 95, 98 (2d Cir. 2021); United States v. Guerrero, 813 F.3d 462, 465 (2d Cir. 2016)).

c. The Current Motion

In November 2022, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (See dkt. no. 432 (the "Compassionate Release Motion")). In the Compassionate Release Motion, Defendant argues the following extraordinary and compelling reasons merit his release from custody: (1) compassionate release motions have been granted by other courts in "similar cases," (id. at 13; see id. at 8-11); (2) Defendant's "exceptional rehabilitation while incarcerated, (id. at 12, 14); and (3) his narcotics trafficking conviction was a "covered offense" under the First Step Act, notwithstanding the Court's decision to deny his prior motion, (id. at 12). The Compassionate Release Motion argues that resentencing is

5

appropriate pursuant to 18 U.S.C. § 3553(a) principally because of the Defendant's rehabilitation.  (See id. at 12, 14-15.)

In May 2023, Defendant filed a pro se motion for reconsideration of the Court's June 2021 denial of Defendant's motion for a sentence reduction under Section 404 of the First Step Act.  (Dkt. no. 433 (the "Reconsideration Motion")). Nominally, Defendant claims that the 2022 Supreme Court decision in Concepcion v. United States, 142 S. Ct. 2389 (2022) is an intervening change in the law that merits reconsideration of his 2020 First Step Act Motion.  (Id. at 1-3.)  However, most of Defendant's brief is dedicated to claims about the sufficiency of the indictment filed against him, (id. at 5-10), claimed deficiencies in the jury's verdict, (id. at 11-14), and claimed deficiencies with his initial sentencing, (id. at 14-16).

II.  Discussion

a. The Reconsideration Motion

i. Applicable Law

"Although the Federal Rules of Criminal Procedure do not provide for motions for reconsideration, Local Criminal Rule 49.1(d) permits such motions and provides that counsel should set forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  United States v. Parilla, No. 13 Cr. 360 (AJN), 2014 WL 2200403, at *1 (S.D.N.Y. May 22, 2014)

(internal quotation marks and citation omitted). Prior to the adoption of Local Criminal Rule 49.1, courts in this district applied the identical standard found in Local Civil Rule 6.3 of the Local Rules to motions for reconsideration in criminal cases. See United States v. Smith, No. 14 Cr. 813 (KPF), 2022 WL 16962261, at *1 n.2 (S.D.N.Y. Nov. 16, 2022). Accordingly, courts apply the same standard of review for motions seeking reconsideration under Local Criminal Rule 49.1 and Local Civil Rule 6.3 and the Federal Rules of Civil Procedure. See United States v. Carollo, No. 10 Cr. 654 (HB), 2011 WL 5023241, at *2 (S.D.N.Y. Oct. 20, 2011).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Butto v. Collecto Inc., 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (internal quotation marks omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quotations and citation omitted); Gupta v. Attorney General of U.S., 52 F. Supp. 3d 677, 679 (S.D.N.Y. 2014) ("[A] motion to reconsider is not a vehicle for litigants to make repetitive arguments that the court has already considered and it cannot be used to fill in the gaps of a losing argument.")

7

(internal quotations marks and citations omitted). Moreover, courts generally will not consider an argument raised for the first time on a motion for reconsideration. See Analytical Surveys, 684 F.3d at 53.

There are three recognized grounds justifying reconsideration: (1) "an intervening change of controlling law," (2) "the availability of new evidence," and (3) "the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Thus, "the moving party [must] point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Ultimately, the decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court[.]" Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009).

ii. Concepcion

Defendant's First Step Act Motion requested that the Court resentence him for his Count Three 21 U.S.C. § 846 narcotics trafficking conspiracy conviction and vacate his Count Four 21 U.S.C. § 848(e)(1)(A) murder conviction. (See First Step Act Motion at 4-5.) Although the Court found that Defendant was

8

eligible for resentencing on Count Three, it exercised its
discretion to deny the motion because (1) Defendant's Guidelines
range was unchanged by the First Step Act or any subsequent change
to the Sentencing Guidelines, (see dkt. no. 430 at 8-9); (2)
resentencing Defendant on Count Three would not impact his overall
mandatory sentence of life imprisonment plus ten years, (see id.
at 9-10); and (3) the "heinous nature of the underlying crime" did
not merit resentencing, despite the "improvements Mr. Stewart has
made to his life," and granting the motion would have been
inconsistent with the requirements of 18 U.S.C. § 3553(a), (id. at
10). As for the request to vacate the murder conviction, the
Court found that Defendant's request sought relief the Court could
not grant. (Id. at 11-12.)

The 2022 Supreme Court case Concepcion v. United States, which
the Defendant describes as an intervening change of controlling
law, (see Reconsideration Motion at 1), has no bearing on the
Court's denial of the First Step Act Motion and is not a basis for
the Court to reconsider its initial decision. Concepcion
addressed "whether a district court adjudicating a motion under
the First Step Act may consider other intervening changes of law
(such as changes to the Sentencing Guidelines) or changes of fact
(such as behavior in prison) in adjudicating a First Step Act
motion" and held that "the First Step Act requires district courts

9

to consider intervening changes when parties raise them . . .
[but] does not compel courts to exercise their discretion to reduce
any sentence based on those arguments."  142 S. Ct. at 2396.

When denying the Defendant's First Step Act Motion in June
2021, the Court did exactly what Concepcion requires: the Court
considered any intervening legal and factual changes before
denying the motion.  Unlike in Concepcion, where subsequent
changes to the Career Offender Guideline dramatically lowered the
Defendant's updated Guidelines range, see 142 S. Ct. at 2397, there
was no similar update to the Guidelines calculation here.  The
Court found that even if it were calculating the Guidelines anew,
Defendant's offense level would remain 43, owing to his conviction
for murder, no matter the impact of the First Step Act on the
narcotics trafficking Guidelines.  (See dkt. no. 430 at 8-9.)

The Court also considered, consistent with the later-issued
holding in Concepcion, Defendant's "evidence of postsentencing
rehabilitation," 142 S. Ct. at 2402, which Defendant described in
his reply brief.  (See dkt. no. 427.)  In the order denying the
motion, the Court explicitly acknowledged the post-sentencing
"improvements Mr. Stewart has made to his life," which included
that the Defendant had "received his G.E.D., taken educational and
self-improvement courses, and been employed in the prison kitchen
for three years."  (Dkt. no. 430 at 10.)  The Court described

these changes in the Defendant's life as "clear and promising."
(Id.)   But notwithstanding these changes, the Court denied the
Defendant's motion, owing in large part to the "heinous nature of
the underlying crime," where the Defendant was a "hitman" who
"murdered William Ragland for $500 and 20 grams of heroin."   (Id.)
The Court's decision was entirely consistent with Concepcion's
pronouncement that "the First Step Act does not require a district
court to accept a movant's argument that evidence of rehabilitation
or other changes in law counsel in favor of a sentence reduction."
142 S. Ct. at 2404-05.

        And as for Defendant's arguments for vacating Count Four, the
21 U.S.C. § 848(e)(1)(A) murder conviction, Concepcion had nothing
to say about that issue and did nothing to call into question the
Court's prior reliance on Second Circuit cases that explicitly
rejected the Defendant's argument.   See Fletcher, 997 F.3d 98;
Guerrero, 813 F.3d 465.

                iii. Defendant's Other Arguments
        The Defendant's remaining arguments in the Reconsideration
Motion have nothing to do with Concepcion, any other intervening
change in the law, or even the Court's initial denial of the First
Step Act Motion.   His remaining arguments, which attack the
sufficiency of the indictment, (see Reconsideration Motion at 5-
10), alleged deficiencies in the jury's verdict, (id. at 11-14),

and alleged deficiencies during sentencing, (id. at 14-16), have no bearing on the First Step Act Motion.  Even if these additional arguments were not devoid of merit, and not a basis for reconsideration, they would have to be raised in a successive Section 2255 motion, rather than in the current Reconsideration Motion.  Because Defendant has already filed one such petition, he must seek and receive permission from the Court of Appeals to file a second or successive petition.  See 28 U.S.C. § 2255(h).

b. The Compassionate Release Motion

i. Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

12

The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13.  The Court of Appeals, however, has construed this policy statement as applicable only to compassionate release motions brought by the Bureau of Prisons ("BOP"), not those brought by defendants.  See United States v. Brooker, 976 F.3d 228,234-36 (2d Cir. 2020).

Thus, in instances such as this, involving a motion brought by a defendant rather than by the BOP, there are three prerequisites for granting a compassionate release motion.  First, the defendant must have exhausted his administrative rights.[1]  See 18 U.S.C. § 3582(c)(1)(A).  Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582.  See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given

---

[1] The Government does not dispute that the Defendant has met Section 3582's exhaustion requirement here, given that more than thirty days have passed since he submitted his request for a reduction in sentence to BOP. (Dkt. no. 435 at 6.)

issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing Butler, 970 F.2d at 1026)); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

In determining whether the section 3553(a) factors weigh in favor of relief, the court considers, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" as well as "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2).

ii. Extraordinary and Compelling Reasons

Defendant argues three points constitute extraordinary and compelling reasons to grant release: (1) compassionate release motions have been granted by other courts in "similar cases," (Compassionate Release Motion at 13; see id. at 8-11); (2) Defendant has shown "exceptional rehabilitation" during his incarceration, (id. at 12, 14); and (3) his narcotics trafficking offense was a "covered offense" under the First Step Act which

14

made him eligible for a sentence reduction, (id. at 12).  In his reply, Defendant also argues that his "harsh upbringing" and the "substantial amount of time that [D]efendant has served" weigh in favor of release.  (Dkt. no. 442 at 1-2.)

Whether considered together or independently, these grounds do not constitute extraordinary and compelling reasons to grant release.

First, Defendant's argument that other courts have granted compassionate release in supposedly similar cases does not in any way support the proposition that this Court should grant compassionate release to this Defendant.  A court is required to consider the facts of the specific defendant before it on a compassionate release motion, and this is what the Court will do while at the same time considering the cases Defendant cites.

Second, with respect to Defendant's supposedly "exceptional rehabilitation," he points out that he has completed nineteen educational classes and seven work programs during his incarceration.  (See Compassionate Release Motion at 16).  Thus he states he is a "changed person, from bad to good."  (Id. at 14.)  While Defendant is to be commended for using his time wisely to better himself, such achievements during his over two decades of imprisonment do not stand out as exceptional.

Third, with respect to Defendant's First Step Act argument, while Defendant is technically correct that he was "eligible" for relief under the act, this eligibility would extend only to his Count Three narcotics trafficking conviction, for which he received a 20-year concurrent sentence. He is ineligible, under the First Step Act, for any reduction in his overall sentence of life plus ten years. As the Court noted when denying the First Step Act Motion, the narcotics trafficking conviction "is an irrelevant component of Mr. Stewart's sentence." (Dkt. no. 430 at 9.) In other words, if Defendant had never been charged with or convicted of the narcotics trafficking conspiracy count, he would still be serving a life sentence, and he could not now claim that a conviction for a First Step Act "covered offense" was a basis for compassionate release. It cannot be the case that because Defendant was convicted of an additional crime, beyond a murder conviction that carried a mandatory life sentence, an extraordinary and compelling reason to grant compassionate release exists because of a subsequent statutory reduction for a separate count. Accordingly, this argument is without merit.

Finally, as noted, Defendant also argues in reply that his harsh upbringing and the length of time he has served constitute unusual and exceptional circumstances warranting release. Courts have indeed recognized that a defendant's difficult upbringing may

be relevant when evaluating whether extraordinary and compelling reasons warrant relief.  See United States v. Ramsay, 538 F. Supp. 3d 407, 425 (S.D.N.Y. 2021) (considering defendant's history of childhood abuse and neglect a relevant factor to his motion for a sentence reduction).  Here, however, Defendant's challenging childhood does not on its own constitute an exceptional circumstance warranting Defendant's release.

As to the length of time Defendant has served—approximately twenty years and five months—this can hardly constitute exceptional circumstances because it was mandated by statute. Defendant's conviction on Count Two for murder in aid of racketeering, in violation of 18 U.S.C. 2 §§ 1959(a)(1) and 2 carried a mandatory life sentence.  His conviction on Count Five for using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a narcotics trafficking conspiracy, which firearm was discharged, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, carried a mandatory consecutive ten-year sentence.  That Defendant is serving very substantial time for crimes carrying a mandatory life plus ten years sentence is no surprise.  And it most certainly does not constitute extraordinary circumstances compelling release.

III. Section 3553(a) Factors

Even if Defendant had proffered extraordinary and compelling reasons to grant release, the 3553(a) factors counsel against release.

Federal law requires courts to consider "the nature and circumstances of the offense" and impose a sentence that is calculated "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1), (2)(A). There are, of course, other factors in Section 3553(a) for courts to consider, but Congress has determined that in cases of murder committed in aid of racketeering activity, the right balance of these factors requires a sentence of life imprisonment. See 18 U.S.C § 1959(a)(1). Although courts are not bound by mandatory sentences in granting compassionate release, the facts of this murder are such that a life sentence remains appropriate.

Defendant was a hitman who was hired by the Westchester Avenue Crew to murder William Ragland in exchange for $500 and 20 grams of heroin. When approached about murdering a man he did not know, and with whom he had no personal dispute, the Defendant did not hesitate. He did not need to think about it; he got a gun and he carried out the execution. This attack was horrific and brutal. After sitting through the trial, the Court expressed no reservation

about imposing the mandatory life sentence and noted that a life sentence was "certainly required" to achieve the statutory purposes of sentencing.  (Sent. Tr. at 15-16.)  And two years ago, when denying the First Step Act Motion, the Court again noted its obligation to impose a sentence that "reflect[s] the seriousness of the offense" and "avoid[s] unwarranted sentencing disparities." (Dkt. no. 430 at 10 (quoting 18 U.S.C. §§ 3553(a)(2)(A) and (a)(6))).  Any sentence reduction would fail to further those goals.  Despite Defendant's argument in reply that Defendant's twenty years in prison "has already served [the] purposes [of reflecting the seriousness of the offense and providing just punishment]," (dkt. no. 442 at 5), Defendant's life sentence remains appropriate.

With respect to specific deterrence, Defendant argues in reply that his "rehabilitation and BOP progress reports and letters submitted by others show that he is productive and committed to personal growth and helping others.  Defendant's age [and] strong . . . support from family and friends all strongly suggest that he is unlikely to recidivate."  (Id.)  While specific deterrence might not necessarily remain a factor today, general deterrence does.  Gang activity, including murder, remains a threat to the safety of our citizens.  In order to deter other individuals who

19

might be tempted to commit murder at the behest of a gang, this Defendant must serve his mandatory life sentence.

Also in reply, Defendant argues that "[t]he sentence served has already accomplished th[e] end" of "provid[ing] the [D]efendant with needed educational or vocational training, medical care, or other correctional treatment" because he has been rehabilitated. (Id.) Again, the Court commends Defendant for his programming successes, but they are hardly extraordinary and pale in comparison to the seriousness of his offense and the need for general deterrence.

Finally, Defendant argues in reply that a sentence reduction will avoid unwarranted sentencing disparities. (See id.) He argues that he "has already served a sentence that is longer than the average time for murder or manslaughter." (Id.) While that might very well be true, Defendant was not convicted on those crimes. As noted above, he was convicted of murder in aid of racketeering, in violation of 18 U.S.C. 2 §§ 1959(a)(1) and 2—which Congress found merited a mandatory life sentence—and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a narcotics trafficking conspiracy, which firearm was discharged, in violation of 18 U.S.C. §§ 921(c)(1)(A)(iii) and 2—which Congress found merited a

mandatory, consecutive ten-year sentence. Any perceived sentencing disparity is richly deserved.

For all of these reasons, the 3553(a) factors counsel against release.

IV.  Conclusion

For the reasons set out above, Defendant's Reconsideration Motion and Compassionate Release Motion are DENIED.

The Clerk of the Court is respectfully directed to close docket entries 432 and 433 and mail a copy of this order to Defendant.

SO ORDERED.

Dated:    New York, New York
          January 14, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge